Richardson, Ch. J.,
delivered the opinion of the court:
The only defense set up'in this case is want of jurisdiction on account of the provisions of section 1006 of the Bevised Statutes, which is as follows:
“ Sec. 1066. The jurisdiction of the said court [of Claims] shall not extend to any claim against the Government not pending therein on December one, eighteen hundred and sixty-two, growing out of or dependent on any treaty stipulation entered into with foreign nations or with the Indian tribes.”
The argument of the defendants is that as the claimants recovered judgment in the Court of .Commissioners of Alabama Claims re-established by the Act of June 5, 1832, chapter 195 (22 Stat. L. 98), which was payable by section 7 of that act “ out of the sum of money paid to the United States pursuant to article seven of the treaty of Washington, and accruing therefrom, not appropriated to claims proved under the provisions of said chapter four hundred and ñfby-nine (18 Stat. L., 245), or any act extending the time for the filing of claims thereunder,” and are now seeking to recover part of that judgment, which they allege is due and unpaid; therefore their claim is one *129 “growing out of or dependent upon” a treaty stipulation entered into with “ Great Britain,” called the treaty of Washington (17 Stat. L., 803).
Wo are unable to find any stipulation of that treaty out of which the present claim grew or upon which it is dependent. It is true that Great Britain agreed to pay to the United States such sum as should be awarded by arbitrators to be appointed as therein prescribed, that such arbitrators were appointed and did award to the United States a sum in gross ($15,500,000) for all the claims referred to it, and that the United States received the money, and it was covered into the Treasury as a separate fund.
But there is no stipulation by which the United States agreed how the money or any part of it should be disposed of; nor did they become liable upon an implied assumpsit, growing out of the provisions of the treaty, to distribute the money to any individuals whatever. (Atocha’s Case, 17 Wall., 439; Baron De Bode's Case, 8 Q. B., 208-285; 13 id., 304; Rustomjee v. The Queen, 1 Q. B. Division, 487; 2 id., 69; Burnand v. Rodocanachi’s Sons & Co., 5 C. P. D., 424; 7 House of Lords Appeal Cases, 333.)
We so held in the Great Western Insurance Co. Case (19 C. Cls. R., 200), andonappeal theSupreme Court said: “ The opinion of the learned chief-justice [.Drake] of the Court of Claims is an able presentation Of that view.” (112 U. S. It., 193.)
Certainly the present claim does not depend upon any treaty stipulation, and if in any vagueand indefinite sense of the words “ it grew out of” the stipulations of the treaty because it may be supposed that the United States would never have re-cog-, nized the claim unless they had received by treaty the money which constitutes the fund out of which it is made payable by-statute, that is far too remote “ a growing out of treaty stipulations ” to have been within the contemplation and meaning of section T066 of the Devised Statutes. The fund, but not the claim to participate in its distribution,, grew out of the treaty stipulations.
The object of that provision was no doubt to prevent this court from making decisions interpreting and enforcing obligations of treaties by which the diplomatic affairs might be complicated, and was not to withdraw from its ordinary jurisdiction claims founded on laws of Congress appropriating to individu *130 als money obtained by treaty as to which claims no stipulations of a treaty could possibly be involved. There is little or no difference between the phrases “ growing out of ” and “ dependent upon.” Claims that are dependent upon treaty stipulations necessarily grow out of them, and we can not conceive of a case growing out of such stipulations which must not be dependent upon them to a greater or less degree. 1 The word “ or” in this connection may not inappropriately be interpreted as meaning “ and,” so that the whole may be taken as one phrase, “ growing out of and dependent upon.”
The present claim, in fact and in law, is founded wholly upon the laws of Congress, and in deciding upon its merits wo need not even examine or refer to the treaty or anything done under it.
The Act of June, 1882 chapter 192 (22 Stat. L., 98), provided that judgments of the Court of Commissioners of Alabama Claims, of which that of the claimants is one, should be paid out of the sum of money paid to the United States pursuant to article 7 of the treaty of Washington, without other references to the treaty.
The controversy grows out of the statement and settlement of accounts by the accounting officers of the Treasury in the ordinary line of their duty under an act of Congress, the interpretation of which is the only issue between the parties.
The Act of June 2,1886, chapter 416 (24 Stat. L., 77), by section 5, provided how the account should be stated for the purpose of distribution of the fund among the judgment creditors. It specified the amount of the fund remaining in the Treasury and what deductions therefrom should be made and how such deductions should be determined. The amounts of those several deductions were fixed by the officers to whom that duty was intrusted, and it only remained for the accounting officers to so state the account and to pass the claims thereon according to the pro rata distribution provided by the statute. No discretionary powers were given to them, and their duties were the same as in other cases of accounting, in which their action merely directs that money shall be paid out of the Treasury by warrant, but does not affect the legal rights of the parties. (McKnight's Case, 13 C. Cls. R., 292; Longwill's Case, 17 C. id., 288, 291.)
They charged against the fund out of which the claimants’ *131 judgment was payable by statute, $249,168.41, expenses of tribunal of arbitration at Geneva. The claimants are seeking to recover a proportionate share of that amount, as improperly deducted by the accounting officers from the fund to be distributed.
The defendants rely upon the case of the Great Western Insurance Go., as decided by the Supreme Court (112 U. S. R., 193).
But in that case the claimant corporation was not seeking to recover under any law of Congress, but was attempting to enforce an alleged implied assumpsit on the part of the United States, growing out of and dependent upon the stipulations of the treaty of Washington, notwithstanding the laws of Congress, which expressly excluded its claim from consideration and from payment out of the fund in controversy. .Instead of founding its claim upon a law of Congress, as do the present claimants, the company invoked the jurisdiction of this court to set aside and annul the statute provisions. The two cases proceed upon exactly opposite grounds.
In our opinion this court is not excluded from the jurisdiction of the present case by reason of section 1066 of the Revised Statutes, even if that section be in force and unrepealed. But it is a serious question whether that section is now in force.
The petition in this case was filed October 4,1887, and must therefore be governed by the provisions of the Act of March ■3,1887, chapter 359 (24 Stat. L., 505). The first section of the act gives this court jurisdiction in law and equity, among other matters, of all claims fouuded upon any law of Congress or upon any contract with the Government of the United States. It excepts only claims for pensions, war claims, claims which accrued more than six years before suit brought, and claims rejected, etc., by other tribunals authorized to determine the same. It makes no exceptions of claims growing out of, or dependent upon, any treaty stipulation, and by section 16 it repeals all laws and parts of laws inconsistent with that act. Whether or not section 1066 of the Revised Statutes is repealed by that act it is not necessary to determine, and we express no opinion thereon, as we hold that the section does not in any event apply to the present case.
On the merits it can hardly be doubted, we think, that the accounting officers were in error in charging to:and deducting *132 from the fund the expenses of the Geneva tribunal of arbitration.
Section 5 of the Act of June 2, 1886 (24 Stat. L., 77), fixes the amount of the fund and specifies exactly what shall be deducted from it, and provides that the balance shall be distributed to the judgment creditors. The item thus deducted was not among those thus specified.
Congress previously provided for the payment of the expenses of that tribunal out of any money in the Treasury not otherwise appropriated (Act of December 21,1871, ch. 4,17 Stat. L., 24), and has never made them chargeable to this fund. The claimants are entitled to their share of the amount thus im-jiroperly deducted, and judgment will be entered in their favor for $5,306.53.
Nott and Weldon, JJ., were absent when this case was tried and took no part in the decision.